169 So. 477

**TEAL et al. v. MIXON.**

4 Div. 892.

Supreme Court of Alabama.

June 18, 1936.

Rehearing Granted July 16, 1936.

Simmons & Simmons, of Opp, for appellants.

J. N. Mullins, of Dothan, for appellee.

FOSTER, Justice.

The bill in this suit seeks to have a cloud removed from the title to the land in which complainants assert the reversionary ownership after the death of their father, who, it is alleged, has a life estate which has been acquired from him by respondent. It alleges that their father, David Teal, owner of a life estate, has sold the land to various and sundry persons, and that respondent has acquired such interest through various convey-

ances, and that he is claiming an absolute title in fee, but only owns such life estate of David Teal, and is in possession of it. The prayer is that a decree be entered declaring that he has only an interest during the life of David Teal, which will terminate at his death, and that each of respondent's deeds, or other muniments of title, which are on record, be limited to the life of David Teal, and that complainants own the remainder, which shall become absolute at the death of David Teal.

There are various grounds of demurrer, of which some are, that complainants are not in possession, have an adequate remedy, with no present right to possession, and that there is no averment that David Teal made a deed which purports to convey the fee, and which includes the interest of complainants and which casts a cloud on their title.

■ It is perfectly well settled that a remainderman not in possession, and with no right to the immediate possession, may maintain a bill to remove a cloud from his remainder interest pending the particular estate, but he is under no duty to do so, as a rule. Lansden v. Bone, 90 Ala. 446, 8 So. 65; Dallas Compress Co. v. Smith, 190 Ala. 423, 67 So. 289; Winters v. Powell, 180 Ala. 425, 61 So. 96; Huey v. Brock, 207 Ala. 175, 92 So. 904; St. Clair Springs Hotel Co. v. Balcomb, 215 Ala. 12, 108 So. 858; Hatter v. Quina, 216 Ala. 225, 113 So. 47; Jenkins v. Woodward Iron Co., 194 Ala. 371, 69 So. 646; Prestwood v. Horn, 195 Ala. 450, 70 So. 134.

But under some circumstances he must do so to escape a charge of laches. Woodstock Iron Co. v. Fullenwider, 87 Ala. 584, 6 So. 197, 13 Am.St.Rep. 73; Winters v. Powell, supra; Dallas Compress Co. v. Smith, supra; Lewis v. Belk, 219 Ala. 343, 122 So. 413; Herren v. Beck, 231 Ala. 328, 164 So. 904.

■ But, when complainant does not seek to obtain the benefit of a statutory right (section 9905, Code) in order to have equity to remove a cloud or quiet the title, he must set forth and describe some instrument which on its face appears to convey a title superior to that of complainant, but it does not so in fact by virtue of some circumstance which does not appear on the instrument or in the proceedings necessary to the use of it in evidence, but which circumstance must be otherwise shown by the evidence. King v. Artman, 225 Ala. 569, 144 So. 442; Herren v. Beck, supra. The statute (Code 1923, § 9905 et seq.) by which a court of chancery may quiet title without removing some specific cloud was an enlargement of the jurisdiction of that court (Gill v. More, 200 Ala. 511, 517 [15], 76 So. 453; Bank of Henry v. Elkins, 165 Ala. 628, 51 So. 821; Cooper v. W. P. Brown & Sons Lumber Co., 214 Ala. 400, 108 So. 20), and has never existed in Alabama, except as so conferred. To sustain appellant's contention there would be no need for it.

■ The bill does not allege that any of the conveyances purport to include the reversionary interests of complainant, and that evidence aliunde is necessary to show that such title did not pass. There is nothing in the bill to disclose that the deeds are not limited to the life of David Teal. The mere fact that respondent claims such unlimited right is not sufficient, except under the statute (sections 9905, 9912, Code), to invoke the aid of the chancery court. There must be shown to exist a specific document which on its face casts such a cloud, and not void by its recitals or such evidence as must be used in order for it to be admissible. The bill is not sufficient under either of the statutory proceedings named above, and no such contention is made, and no effort is made to invoke the benefits of the Act of September 7, 1935 (Gen.Acts 1935, p. 777), and we do not wish to reverse a decree on the basis of a principle whose application is not sought.

The decree of the court shows that the demurrer was sustained because the bill did not contain the necessary allegations, to which we have referred, and it is affirmed.

Affirmed.

ANDERSON, C. J., and GARDNER and BOULDIN, JJ., concur.

### On Rehearing.

FOSTER, Justice.

Appellants now invoke application of the Act of September 7, 1935 (Gen.Acts 1935, p. 777), which we mentioned in the former opinion.

■ The Declaratory Judgments Act is an enlargement of the powers of the court, and we are construing it as ap-

plicable to different situations as suggested in each appeal as it is presented. We have had several cases under it. Jefferson County v. Johnson (Ala.Sup.) 168 So. 450;[1] Tuscaloosa County v. Shamblin, ante, p. 6, 169 So. 234. See, also, 12 A. L.R. 52; 19 A.L.R. 1124; 68 A.L.R. 111; 87 A.L.R. 1205.

We prefer not to make application of it or discuss it unless the parties ask that it be applied, and thereby submit to us an actual controversy within its authority.

At the time the former opinion was written, we had not analyzed the act, as applied to the facts set up in the bill, but referred to it so as to give the parties an opportunity to present it on rehearing or otherwise if they desired. We stated the facts on which relief is sought, and showed that complainants did not come within the Code sections extending the right in equity to quiet titles, nor within the original jurisdiction of that court to remove a cloud from title. Whether the Declaratory Judgments Act is available seemed to require some discussion which we thought should be sought and argued in briefs before applying it in a given case. We are now urged to sustain the equity of the bill upon that basis.

Section 1 of the act (page 777) is under the title "Scope," and provides, so far as here important, that: "Courts of record *within their respective jurisdictions* shall have power to declare rights, status, and other legal relations whether or not further relief is or could be claimed. No action or proceeding shall be open to objection on the ground that a declaratory judgment or decree is prayed for."

Section 2 (page 778). "Power to construe, etc." This extends the privilege to one, interested in a *written contract*, or whose rights are affected by a statute, to have a construction of the contract or statute or its validity determined.

Section 3 (page 778) makes it immaterial whether there has been a breach.

Section 4 (page 778) applies to estates of decedents, guardianships, trusts, etc.

Section 5 (page 778). "Enumeration not exclusive." It provides that the enumeration in sections 2, 3, and 4 do not limit or restrict the general powers in section 1, where such relief is sought in which a judgment or decree will terminate the controversy or remove an uncertainty.

■ In the cases in which we have applied the act, it was pointed out that there must be shown to exist an actual controversy which will be settled by a decree declaring its status. They all, we believe, related to the construction or the constitutionality of acts of the Legislature.

■ In the instant suit, there is no such act in question, nor is a written contract, or the administration of an estate or other trust. But an actual controversy as to common-law rights, which is properly classed as justiciable is shown. But it is not one enumerated in sections 2, 3, or 4. Is it therefore within the general terms of section 1? The first sentence is that such judgments may be entered by courts of record within their respective jurisdiction.. It is not clearly stated, though somewhat implied in section 5, that by section 1 the power is conferred upon courts of record to make declaration of all actual justiciable controversies arising from contracts or common-law rights. Section 1 probably was composed so as to apply in all courts of record in which that court would have jurisdiction, but for the declaratory relief prayed for. Sections 2 and 4 go further into detail in that respect and are specific as to the matters there enumerated. So that section 1 seems to be intended to provide that when a controversy belongs to the sphere of jurisdiction ordinarily exercised by a certain court of record, it will not be barred from making a declaration of rights in the exercise of that jurisdiction.

■ Quieting title to land is within the sphere of the circuit court, but exercised to a limited extent in the original equity jurisdiction, enlarged by statute from time to time, and should be treated as being within the jurisdiction of that court as mentioned in section 1, not abridged because the relief sought is declaratory. In other words, the effect is merely to enlarge the right to make declaratory judgments quieting title to land if the act is not limited to the enumerations in sections 2, 3, and 4. Section 12 (page 779) indicates that it is not intended to be so limited, and Borchard on Declaratory Judgments (page 339) so declares. There is nothing in our Constitution to prevent the Legislature from conferring such jurisdiction on the circuit court at law (section 143), or in equity (section 145).

---

Complainants have alleged the existence of an actual controversy as to the title to land properly triable in this proceeding, if it extends to common-law rights. We think that was its purpose, and that it was within the power of the Legislature to do so. So that demurrer to the bill for want of equity or other ground insisted on is not well taken, and is overruled.

Application for rehearing granted; decree reversed, and one here rendered overruling the demurrer.

ANDERSON, C. J., and GARDNER and BOULDIN, JJ., concur.

